JESÚS DE LEÓN ROSA ET UX., Plaintiffs and Appellants, v. EULOGIA COLÓN ALVAREZ, Defendant and Appellee.

No. 5050.   Argued April 1, 1930.—Decided March 20, 1931.

*Ulpiano Crespo, Jr.,* for appellants.   *R. Agrait Aldea* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

The complaint whereby this suit was commenced is entitled "in revendication," and was filed in the District Court

of Arecibo in August, 1928. It contains the following aver-ments:

"Second: That the plaintiffs are the owners of the following property: (Here an estate of one hundred and fourteen acres (*cuerdas*), located in the ward of Islote, Arecibo, is described.)

"Third: That the plaintiffs, Jesús de León Rosa and his wife María de León Casanova, and the defendant, Eulogia Colón Alvarez, together with her husband, Tomás Boneta Bolet, executed on October 30, 1911, before notary Manuel Paz Urdaz, a deed of cancellation of mortgage and of sale with reservation of the right of redemption (*con pacto de retro*), which deed was recorded, as to the sale with said reservation, at folio . . .

"Fourth: That in the said deed the following stipulations were set forth as a part of the contract:

"1. That Mr. de León Rosa may recover the property sold if within a period of four years, beginning on the date of this deed and ending on October 30, 1915, he should return to Mrs. Eulogia Colón Alvarez the purchase price, or $3,100, together with the neces-sary and beneficial expenses incurred in connection with the said property; but that if at the expiration of the stipulated period Jesús de León should not have complied with the above provisions the sale shall become irrevocably perfected, on no further condition than to make such consummation appear of record in the registry of property.

"2. And that during the time fixed for the fulfilment of the aforesaid covenant, Jesús de León Rosa would remain in possession of the property, in the capacity of lessee, at a monthly rental of $31, payable at the end of each month, counted from this date; and it was fully understood that upon a failure to pay three rent install-ments such lease would terminate and the sale become absolute, subject also to be recorded in the registry.

"Fifth: That after the execution of the aforesaid contract, the plaintiffs continued to act as the true owners of the property, by cultivating the same, collecting its fruits, rents, and products, paying taxes to the Insular Government, and exercising, as theretofore, all other acts incident to ownership.

"Sixth: That the plaintiffs have faithfully paid the rent install-ments stipulated in the said deed to the defendant's husband, Tomás Boneta Bolet, who administered her separate property.

"Accordingly, the plaintiffs allege that on July 27, 1912, they

paid the rent installments for June and July, 1912, amounting to $62, to the said Tomás Boneta Bolet, who thereupon signed a receipt which, literally transcribed, reads as follows:

" 'Mr. Jesús de León has paid $62, in currency, on account of rent installments due on the property he holds in the ward of Islote, of this district. Arecibo, July 27, 1912. Signed: T. Boneta.— ($62, currency.) '

"And that on October 30 of the same year they paid to him $93, corresponding to the rent installments for August, September, and October, 1912.

"Seventh: That on November 29, 1912, or six days after the death of Tomás Boneta Bolet and three years before the date of the expiration of the said contract, which had been fixed at October 30, 1915, the defendant, Eulogia Colón Alvarez, maliciously and fraudulently requested and obtained the record in the Registry of Property of Arecibo of the consummation of the said sale with reservation of the right to repurchase on the ground that the plaintiff, Jesús de León, was owing more than three monthly installments of the said rent, which consummation was recorded by a marginal note to inscription No. 5. . . .

"Eighth: That thereupon the plaintiff, De León, accompanied by attorney Cayetano Coll y Cuchí, called at the home of Eulogia Colón Alvarez, and then and there tendered to her the sum of $3,100, to which she was entitled under the said deed of October 30, 1911, and in addition he offered to pay her the expenses of the contract, together with any other proper disbursements made by reason of the sale, as well as such other expenses as she might have incurred, which amount she refused to receive on the ground that the property already belonged exclusively to her; and the plaintiffs now reproduce their offer to faithfully comply with their obligation.

"Ninth: That by unlawfully using the aforesaid deed of October 30, 1911, and after having fraudulently and wrongfully obtained on November 29, 1912, the record in the Registry of the consummation of the sale, as alleged in the seventh paragraph of the within complaint, the defendant Eulogia Colón Alvarez, on February 4, 1914, filed in the Municipal Court of Arecibo an action of unlawful detainer against Jesús de León Rosa and his wife, María de León Casanova, as if they were lessees who had defaulted in the payment of rent on the said property, and obtained a judgment in her favor; and thereafter, on August 6, 1914, the said Eulogia Colón Alvarez obtained

the eviction of plaintiffs herein from the said property, thereby securing wrongful possession thereof.

"Tenth: That since August 6, 1914, the defendant, Eulogia Colón, has been in possession of the property, which is described in the fifth averment of this complaint and the value whereof, according to the official assessment made by the Government, is $17,420; and he has been and is now unlawfully holding the same and collecting its fruits, rents, and products.

"Wherefore, the plaintiffs pray this Court to render judgment against the defendant, directing as follows:

"1. That it be held that the plaintiffs are the true owners of the property described in the complaint and should be restored in the peaceful possession, occupancy, and enjoyment thereof; that the record made in the Registry of Property in favor of the defendant be ordered canceled.

"2. That the plaintiffs be awarded any other relief consistent with the averments of this complaint."

In her answer the defendant admitted the execution of the deed of sale with right of redemption but she contended that, in accordance with the terms thereof, the plaintiffs having defaulted in the payment of more than three monthly rent instalments, she caused the notice of the consummation of the contract to be recorded in the registry; that she became the owner of the premises and, as the plaintiffs refused to voluntarily surrender the possession thereof, she evicted them in 1914 through an action of unlawful detainer. As special defenses she set up: (1) *Res judicata,* on the ground that the question now raised was adjudicated in suit No. 5117, brought by the plaintiffs herein against the defendant; (2) prescription, based on section 1268 of the Revised Civil Code; (3) that the plaintiffs are estopped from asserting any claim, as they have assigned their right of redemption to the Plazuela Sugar Co. With respect to this third defense, it would seem advisable to state that in order not to unduly lengthen this opinion we shall not stop to consider the same, as it is not necessary to go into its merits in order to decide this appeal.

The plaintiffs replied to the new matter contained in the

answer. They opposed the defense of *res judicata* partly as follows:

"That the said suit was brought to annul certain deeds and it was alleged therein that fraud and simulation had been committed in connection with the execution, before notary Paz Urdaz, of the deed of sale with reservation of the right of redemption of September 23, 1909, to which Tomás Boneta Bolet and his wife Eulogia Colón Alvarez had been parties; that it was also prayed against the Plazuela Sugar Co. that the deed of assignment executed on June 18, 1912, before notary Cayetano Coll y Cuchí, be declared void; that Eulogia Colón interposed a demurrer to the complaint therein for want of facts sufficient to constitute a cause of action which this Hon. Court sustained on December 9, 1919, and that a proper judgment was rendered on January 21, 1920, from which the plaintiffs took an appeal, which was dismissed on January 28, 1921.

"That the said suit for the annulment of deeds was founded upon a cause of action different from the one set forth herein; that a majority of the parties to this action are also different, and that the relief sought in the former suit, as the same appears from the prayer therein, was altogether distinct from the one alleged and prayed for in the instant case.

"That as between the aforesaid suit and the present one there is no identity of parties, of subject matter, or of causes of action, and that the defense of *res judicata* is not applicable, because the purpose as well as the legal grounds of recovery in both suits are diametrically different."

They opposed the defense of prescription, thus:

"That the plaintiffs have faithfully complied with the covenants and conditions to whose fulfilment they were bound under the deed of October 30, 1911, acknowledged before notary Manuel Paz Urdaz, by punctually paying to the defendant the rent installments due, and that, notwithstanding this, the said defendant, invoking the resolutory condition transcribed in the fourth averment of the amended complaint herein, has deprived and defrauded the plaintiffs of their right and property by recording the consummation of said sale in the books of the Registry of Property of Arecibo, on November 29, 1912, as alleged in paragraphs 3, 4, 5, 6, and 7 of said amended complaint.

"*Consequently, the plaintiffs have no interest in procuring, nor do they seek, the cancellation of the deed of sale coupled with the*

*pact of redemption, or of any other deed, but expect the specific performance of the covenants set forth in the aforesaid deed of October 30, 1911, executed before notary Paz Urdaz."* (Italics ours.)

The case went to trial, at which both parties introduced evidence, and the court finally rendered judgment for the defendant and imposed the costs on the plaintiffs. According to the statement of the case and opinion filed with the judgment, the latter is based upon the conclusion reached by the court that the defenses of prescription and *res judicata* had been established in favor of the defendant, for which reason the court deemed it unnecessary to consider the other questions raised.

Thereupon the plaintiffs took the present appeal, and in their brief they have assigned twelve errors.

In our opinion, the defense of *res judicata* lies. Suit No. 5117 was instituted in the District Court of Arecibo by the identical plaintiffs against the same defendant herein, and the succession of Tomás Boneta and the Plazuela Sugar Co. were also included as defendants. It was entitled "On revendication and nullity of deeds". In the complaint it was averred that the deed of sale with right of repurchase was not a sale but a mortgage, and it was prayed for a judgment:

"1. Holding that the deed of October 30, 1911, executed before notary Paz Urdaz, is null and void, and directing that the record thereof as well as subsequent records in connection therewith be canceled.

"2. Holding that the deed of July 18, 1912, executed before notary Cayetano Coll y Cuchí, is null and void, and directing that the record thereof in the registry of property be canceled.

"3. That the ownership of the property described be declared to have remained in the plaintiffs notwithstanding the deeds hereinbefore mentioned, and that the plaintiffs be restored to the peaceful possession, occupancy, and enjoyment of said property."

The defendant, Eulogia Colón, also a defendant herein, demurred to the complaint on various grounds, and these

were sustained by the court, which thereafter, on January 21, 1920, rendered a judgment reading as follows:

"In this case, this court, after considering the demurrer filed by the defendant, Eulogia Colón, on the grounds of misjoinder of causes of actions, failure to state facts sufficient to constitute a cause of action, and prescription of the action brought, entered an order on December 9, 1919, whereby it sustained the said grounds of demurrer, and imposed costs on the plaintiffs.

"And the defendant, Eulogia Colón, having filed on January 10, 1920, a motion for final judgment, the court has today delivered its opinion in this case upon the grounds whereof judgment must be and is hereby rendered for the defendant, with costs against the plaintiffs."

The plaintiffs took an appeal, which was dismissed by an order of January 28, 1921, for failure to file the transcript of record in this Court.

A consideration of the foregoing facts in the light of section 1219 of the Civil Code and of the jurisprudence laid down, among others, in *Ninlliat* v. *Suriñach et al.,* 27 P.R.R. 69, suffices to conclude that between the action decided by the final judgment of January 21, 1920, and the instant case there is absolute identity of subject matter, of causes of action, and of parties in their respective capacities as litigants.

The fact that in suit No. 5117 other defendants were joined, makes no difference. The principal defendant there, as here, was Eulogia Colón Alvarez, the vendor under the deed of sale with right of redemption. The thing sought to be recovered is the same—the property of one hundred and fourteen acres located in the ward of Islote, Arecibo. The actions, although differently entitled, are substantially identical. The parties are the same and they litigate in the same respective capacities.

If there was any real opportunity for the plaintiffs to recover the property in question, they had it in suit No. 5117. They perhaps exercised there the proper action, and had they perfected their appeal, they would perhaps have obtained a

favorable decision. They have no reason to complain. They had their day in court, their opportunity, but they did not take full advantage thereof.

But conceding, without holding, that there was no real identity of causes of action between suit No. 5117 and the present one, yet taking as a basis the averment made by the plaintiffs in their reply, that "the plaintiffs have no interest in procuring, nor do they seek, the cancellation of the deed of sale coupled with the pact of redemption, or of any other deed, but expect the specific performance of the covenants set forth in the aforesaid deed of October 30, 1911, executed before notary Paz Urdaz," we would still be constrained to hold that the judgment appealed from must be affirmed, because the evidence offered by the plaintiffs is insufficient to show that they had paid the rent instalments for August, September, and October, 1912.

We know of the receipt, which has been copied into the complaint. By its terms it does not purport to cover the rent instalments for June and July, 1912. But even if it did, what was important and indispensable in order to sustain the seventh averment of the complaint and, with it, plaintiffs' new efforts herein, was to prove payment of the instalments for August, September, and October. And what evidence did they produce? Only oral evidence, as follows:

The plaintiff, Jesús de León Rosa, testified:

"What months are covered by the seventy-two dollars?

"June and July.

"After that, how did you pay to Mr. Tomás Boneta the other instalments? Once he came to my house. I had received some money and I turned it over to him.

"On what date was that?—On Setember 30.

"What money did you deliver to Boneta on that day?—On that day I delivered to him eight hundred and fifty dollars.

"In what year did that take place?—In 1912.

"In what form did you deliver that money?—Entirely in bills.

"For what purpose was that money delivered?—To cover three

monthly installments which I owed him, and the balance to apply to the principal, amounting to three thousand one hundred dollars.

"Explain to the court how that delivery was made, and what happened there?—I delivered the money to him and then he searched his pockets, but he had no note-book or anything with him, and at home I did not accustom to have ink or paper, as I never use them; and we looked for paper and ink but did not find any.

"At that time, did he give you a receipt?—Then as no ink was found. The main thing needed was ink, and it was not found; and he told me: 'You go and stop at Arecibo, and I will give you the receipt there.' But as I was accustomed to trust him, and everything he said to me by word of mouth was as if he had put it in a deed, I did not hurry about going to Arecibo, and when I went a week or two afterwards, to get my receipt, he was dangerously ill."

Later, on cross-examination, he stated:

"After Mr. Tomás Boneta had died, did Mrs. Eulogia Colón acknowledge to you the payment of that money?—No, sir.

"What did Mrs. Eulogia Colón and Dr. Boneta do when you told them about the money?—They did not know anything about that money. It was received by Mr. Tomás Boneta without the knowledge of anyone. The money was received by Mr. Boneta at my home. He arrived there on that day riding in a buggy driven by a bay horse; and we went out to look about the property and see the cattle, and on our way he asked me: 'Have you made any money?', and I answered: 'Yes, I have some at home, and if it suits you you may take it along with you, to settle for the interest.' And he said: 'All right.' We continued our way and then returned home, where he said: 'Before leaving I want to lunch here,' and I ordered a lunch to be prepared which we ate. Later on, a heavy shower fell, and he stated to me: 'Give me the money you have as I am going to take it with me'; and I said: 'You take that money along but you settle the interest that I owe you and apply the balance on account.' And he said: 'Yes, why not?' We then counted the money and when he was about to give me a receipt he searched for his note-book and said: 'I did not bring my note-book; what a bad luck'; he asked me for ink and I said, 'We have no ink at all.' And he then stated: 'Come to town immediately so that you get the receipt'; but I did not do so until two or three weeks afterwards. When I went to town I found him at the point of death, and it was impossible to talk with him."

Plaintiff María de León Casanova testified thus:

"What did Mr. Tomás Boneta do while he was at your home on that day?—He was there and ate lunch, and later on he was handed a certain amount of money which was to be delivered to him.

"How much money was it to be delivered or was delivered?—Eight-hundred and fifty dollars.

"Who kept it?—I kept it in a trunk.

"Where did that money come from?—From the sale of chewing-tobacco, tobacco-leaf, and cattle.

"When that money was delivered to Tomás Boneta, what was it agreed?—That Jesús should come in a few days to get the receipt.

"Why did not Mr. Boneta deliver a receipt at once?—Because there was no pen or ink at home.

"Did not Tomás Boneta have any on his person?—No, sir.

"For what purpose was the money delivered?—To pay for the instalments for three months, and the balance to be applied to the principal.

"Can you tell what monthly instalments were thus paid?—August, September, and October."

Fernanda Fernández, the house cook, Juan Vélez, a laborer, and Eugénio Natal, a visitor at the house, corroborated plaintiffs' testimony.

In her turn, the defendant introduced as a witness Luis C. Boneta, who is the eldest son of Tomás Boneta and herself. He testified, in so far as now pertinent, thus:

"On or about 1914, and prior thereto since 1911, did you manage the affairs of Eulogia Colón Alvarez?—I did; both my father and myself.

"Do you know on what date did Mr. Tomás Boneta die?—On November 22, 1912.

"After that death, have you had any talk with León Rosa concerning the performance of a contract entered into between your mother and him?—I have.

"Explain.—At the close of November, Jesús de León was owing the rent installments on the property which had been leased to him. By that time he owed five or six monthly installments, and when I recorded the consummation of the sale in the registry of property, he told me he had no interest in the property because he was about

to move to Hatillo with his brother, and that he had sold his right of redemption to the Plazuela Sugar Company.

"About this receipt for rent. Are you acquainted with your father's signature?—Yes, sir.

"That receipt for rent, to what does it refer?—This receipt represents a partial payment on rent due but not paid. When it was drawn, on July 27, 1912, he owed five or six monthly instalments, and this receipt covers up to May or June. One or two months remained unpaid.

"After that receipt was issued, did he pay for any other month? —Absolutely none. Fifteen days later my father died, and he had told me that the consummation of the sale had to be recorded."

How is it possible to attempt to establish by such evidence, contradicted as it was, a fact so essential, so vitally important, that, it may safely be said, constitutes the sole basis for the new suit herein?

No transactions are here involved in which it was customary to dispense with the use of documents. When the plaintiffs made any payment, a receipt was issued to them.

On direct examination, the plaintiff himself testified that owing to the fact that he trusted Mr. Boneta, he did not "hurry" about getting the receipt, and that when "a week or two afterwards" he went to get it, Boneta was already dangerously ill. Later on, in answer to questions propounded to him by counsel for the defendant, he stated that Boneta had said: " 'I did not bring my note-book; what a bad luck'; he asked me for ink and I said, 'We have no ink at all.' And he then stated: 'Come to town immediately so that you get the receipt'; but I did not do so until two or three weeks afterwards. When I went to town I found him at the point of death, and it was impossible to talk with him."

If that actually occurred, it was really unfortunate for the plaintiffs that they should have lost so much time in attempting to get written evidence which would have enabled them to enforce their rights in a court of justice.

Moreover, taking the specific performance of the contract as a basis, when and where was any compliance made of the

condition imposed as a prerequisite for redemption—the timely return to the purchaser of the price paid by him for the property?

The tender to which the complaint and, subsequently, the evidence refer are plainly inadequate. If the defendant refused to receive the money, the plaintiffs should have made a consignation thereof and taken such other steps as would have placed them within the protection of the law.

Therefore, from whatever point of view this case is considered, the judgment must be the same. The attitude of plaintiffs is easy to understand. Apparently they have lost a property by reason of a debt, which perhaps did not amount to one-third of its value. But it is not enough to have a right (assuming that plaintiffs herein had any); it is necessary that the same should be properly exercised. There are rules which, when applied in particular instances, may perhaps not seem altogether just, but which the experience of centuries has demonstrated to be the best means of insuring the greatest amount of justice that the imperfect human nature may hope to dispense. Besides, one ought to be a good loser and not resort to improper means, to evidence so doubtful as to leave in the mind of the judge the impression that it may have been fabricated, in order to revive a litigation already decided, in which all the interested parties have participated and where the complainant, as in the instant case, lost by his own conduct the opportunity to exhaust his remedy.

The judgment appealed from must be affirmed.